IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| TIFFANI ALLEN, | ) |
| | ) |
| Plaintiff, | ) 2:10-cv-01035-LRR |
| | ) |
| v. | ) |
| | ) |
| FIRST FINANCIAL ASSET | ) |
| MANAGEMENT, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES the Plaintiff, TIFFANI ALLEN, by and through her attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for her complaint against the Defendant, FIRST FINANCIAL ASSET MANAGEMENT, INC., Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. TIFFANI ALLEN, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Dubuque, County of Dubuque, State of Iowa.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Enterprise Rent A Car (hereinafter "Enterprise").

1

6. The debt that Plaintiff allegedly owed Enterprise was for a bill relative to the rental of an automobile used for personal purposes.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. FIRST FINANCIAL ASSET MANAGEMENT, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Iowa. Defendant is incorporated in the State of Georgia.

9. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

10. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

11. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

12. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

13. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV. ALLEGATIONS

14. On or about July 6, 2010, Defendant sent Plaintiff a correspondence in an attempt to collect a debt allegedly owed by Plaintiff to Enterprise. (See a true copy of the correspondence attached hereto as **Exhibit A**).

15. The correspondence stated "**Your failure to resolve the above matter has resulted in us sending a license suspension request to your state DMV. To require reinstatement it is necessary to contact us immediately.**" (*Emphasis added*).

16. Defendant's representations, as delineated above, caused Plaintiff to believe that her driver's license was going to be suspended.

17. Given Defendant's representations, Plaintiff initiated a telephone call to the DMV to inquire whether her license was suspended.

18. Given Defendant's representations, Plaintiff further traveled to the DMV to inquire whether her license was suspended.

19. From in or around July 2010 through in or around October 2010, and on multiple occasions therein, Defendant initiated multiple telephone calls to Plaintiff in an attempt to collect a debt she allegedly owed.

20. From in or around July 2010 through in or around October 2010, and on multiple occasions therein, Defendant initiated at least two (2) telephone calls to Plaintiff in a single day.

21. During the aforesaid time period, and on multiple occasions therein, Plaintiff requested that Defendant cease contacting her multiple times in a single day.

22. Defendant, on multiple occasions, informed Plaintiff that it could call Plaintiff as many times as it wanted because she owed a debt on which it was attempting to collect.

23. The repetitive calls made by Defendant to Plaintiff were disturbing, harassing, and had the effect of making Plaintiff feel concerned and suspicious about answering the telephone.

24. From in or around July 2010 through in or around October 2010, and on multiple occasions therein, Defendant initiated multiple telephone calls to Plaintiff's residence and left multiple voicemail messages for Plaintiff.

25. Plaintiff's outgoing voicemail message does not identify Plaintiff by name such that any caller could reasonably conclude that only Plaintiff will be listening to voicemail messages.

26. During the course of the aforementioned voicemail messages, Defendant disclosed that it was a debt collector and that Plaintiff owed a debt.

27. On multiple occasions, Plaintiff's children heard the aforementioned voicemail messages.

28. On multiple occasions, Plaintiff's fiancé heard the aforementioned voicemail messages.

29. On one occasion, Plaintiff's friend heard one of the aforementioned voicemail messages.

30. Plaintiff did not consent to Defendant contacting third parties.

31. From in or around July 2010 through in or around October 2010, Defendant engaged in multiple telephone conversations with Plaintiff.

32. During a telephone conversation between Plaintiff and Susan, a duly authorized representative of Defendant, Defendant asked Plaintiff if she valued having her driver's license.

4

33. Defendant then told Plaintiff that if she did not pay the debt she owed then Defendant would suspend her driver's license.

34. During the aforesaid time period, in another telephone conversation between Plaintiff and Defendant, Defendant told Plaintiff that if she did not pay Defendant for the debt she owed then Defendant would garnish her wages.

35. At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no lawsuit had been filed against Plaintiff for the debt she allegedly owed.

36. At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no judgment had been entered against Plaintiff for the debt she allegedly owed.

37. The debt allegedly owed by Plaintiff is not a debt that can proceed to garnishment without Defendant first having secured a judgment against Plaintiff for the alleged debt.

38. In or around July 2010, during a telephone conversation between Plaintiff and Defendant, Defendant told Plaintiff that she had to treat the debt she owed as a priority.

39. Defendant told Plaintiff that if she was able to afford having a telephone then Plaintiff should be able to pay Defendant for the debt she owed.

40. Defendant further told Plaintiff that paying the debt she owed should be just as much as a priority for Plaintiff as it was to purchase food for her family.

41. Defendant's statements as delineated above are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

42. The natural consequence of Defendant's statements was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owed Enterprise.

43. The natural consequence of Defendant's statements was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

44. The natural consequence of Defendant's statements was to cause Plaintiff mental distress.

45. From in or around July 2010 through in or around October 2010, Defendant initiated telephone calls to Plaintiff's residence wherein individuals other than Plaintiff answered the telephone.

46. Defendant, during a telephone call during the aforesaid time period, informed one of Plaintiff's children that if Plaintiff did not pay the debt she owed then Plaintiff would lose her driving privileges.

47. Defendant, during a telephone call during the aforesaid time period, informed another one of Plaintiff's children that Defendant was calling in an attempt to collect a debt from Plaintiff.

48. On multiple occasions during the aforesaid time period, Defendant's duly authorized representatives informed Plaintiff's fiancé that Plaintiff owed a debt.

49. Upon information and belief, to date, Defendant has not sent documentation to the State of Iowa's DMV requesting that Plaintiff's driver's license be suspended.

50. Upon information and belief, at the time of making the aforementioned threats to suspend Plaintiff's driver's license, as delineated above, Defendant had no intention of contacting the State of Iowa's DMV to request that Plaintiff's driver's license be suspended.

51. Upon information and belief, at the time of making the aforementioned threats to suspend Plaintiff's driver's license, Defendant had no authority to suspend Plaintiff's driver's license.

6

52. In its attempts to collect the debt allegedly owed by Plaintiff to Enterprise, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

   b. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);

   c. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

   d. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   e. Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

   f. Caused a telephone to ring or engaged any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse or harass any person at the called number in violation of 15 U.S.C. §1692d(5);

   g. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

   h. Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

   i. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

   j. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

   k. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

7

53. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V. JURY DEMAND

54. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TIFFANI ALLEN, by and through her attorneys, respectfully prays for judgment as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00;

    c.    Plaintiff's attorneys' fees and costs;

    d.    Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**TIFFANI ALLEN**

By:   s/ David Steen
       Attorney for Plaintiff

Dated: December 27, 2010

David J. Steen
LARRY P. SMITH & ASSOCIATES, LTD.
P.O. Box 1436
Des Moines IA 50305
Direct Dial:  (515) 724-3384
Telephone:  (888) 822-1777 (x830)
Facsimile:  (888) 418-1277
E-Mail:    dsteen@smithlaw.us